Brian Heit (SBN: 302474)
Brenna E. Erlbaum (SBN: 296390)
**HEIT ERLBAUM, LLP**
6320 Canoga Avenue
15th Floor
Woodland Hills, CA 91367
[phone]: (805) 231.9798
Brian.heit@HElaw.attorney
Brenna.Erlbaum@HElaw.attorney
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### Sacramento

| | |
|---|---|
| MALIBU MEDIA, LLC, | Case Number: 2:16-cv-00330-JAM-KJN |
|       Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX-PARTE* MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE** |
| vs. | |
| JOHN DOE subscriber assigned IP address 71.193.37.58, | Date:<br>Time:<br>Place:<br>Honorable Judge: |
|       Defendant. | |

[Remainder of page intentionally left blank]

1

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 6

II.   FACTS ......................................................................................................................... 6

    A.   Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business ................................................................ 6

    B.   Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously .................. 8

    C.   The Infringer .............................................................................................................. 8

III.  ARGUMENT ................................................................................................................ 9

    A.   Circuit Courts Unanimously Permit Discovery to Identify John Doe Defendants ..... 9

    B.   Good Cause Exists to Grant the Motion .................................................................... 9

        1.   *Plaintiff's Prima Facie Claim for Copyright Infringement Withstands a Motion to Dismiss* ...................................................................................................... 10

        2.   *No Alternative Means Exist to Obtain Defendant's True Identity* .................. 13

        3.   *There is a Risk that Defendant's ISP will not Retain Records Correlating Defendant's True Identity* ................................................................................ 15

        4.   *Plaintiff Identifies Defendant with Specificity* ................................................. 16

        5.   *Plaintiff has Taken Reasonable Steps To Identify Defendant* ......................... 17

        6.   *Plaintiff's Subpoena is Likely to Lead to Identifying Information That Will Permit Service on Defendant* ......................................................................... 18

    C.   Plaintiff's Need for Expedited Discovery, in Consideration of the Administration of Justice, Outweighs Any Prejudice to Defendant or the ISP .................................... 19

        1.   *Defendant is Not Prejudiced Because Plaintiff's Request is Narrowly Tailored* .......................................................................................................... 19

        2.   *Plaintiff's Need to Ascertain Defendant's Identity Outweighs Defendant's Interest in Remaining Anonymous.* ................................................................. 19

IV.   CONCLUSION ........................................................................................................... 21

2

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ......................................................................................................... 20

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................ 11

*Assef v. Does 1-10*, No. 15-CV-01960-MEJ, 2015 WL 3430241 (N.D. Cal. May 28, 2015)14, 19

*Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 5:14-cv-01409, 2015 WL 2265479 (N.D. Cal. May, 13, 2015)................................................................................................. 11

*Blakeslee v. Clinton County*, 336 Fed. Appx. 248, 250 (3d Cir. 2009)......................... 9

*Braun v. Primary Distrib. Doe No. 1*, No. 12-5812 MEJ, 2012 WL 6087179 (N.D. Cal. Dec. 6, 2012) ....................................................................................................... 18, 19

*Bright Solutions for Dyslexia, Inc. v. Doe 1*, 2015 WL 5159125 (N.D. Cal. Sept. 2, 2015) ...... 10

*Bright Solutions*, 2015 WL 4776113........................................................................... 19

*Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010) ..................... 9

*Cobbler Nevada, LLC v. Does*, No. 2:15-cv-11871, 2015 WL 4276082 (E.D. Mich. July 14, 2015) ......................................................................................................................... 15

*Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ................................................... 9, 21

*Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ................................................ 9

*Digital Sin, Inc. v. Does*, No. C 11-04397, 2011 WL 5362068 (N.D. Cal. Nov. 4, 2011) ......... 15

*Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838 (S.D.N.Y. May 15, 2012)....................................................................................................... 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)....................... 11

*Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980)..................................... 10, 21

*Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007).............................................. 9

*In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ........................... 11

*In Re Malibu Media*, No. 15-cv-1855, 2015 WL 3605834 (E.D.N.Y. June 8, 2015) ............... 15

*In re Verizon Internet Servs., Inc.*, 240 F. Supp. 2d 24, 37 (D.D.C. 2013)................. 16

*Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998) ....................................................... 9

*Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980)..................................................... 9

*Malibu Media LLC v. John Doe,* No. 12-3180, 2013 WL 3732839 (S.D.N.Y. July 16, 2013) .. 12

*Malibu Media, LLC v. Benitez*, No. 8:13-cv-03209 (M.D. Fla. Aug. 7, 2014).................. 12

*Malibu Media, LLC v. Butler*, No. 13-cv-02707 (D. Colo. April 24, 2014) .................. 12

*Malibu Media, LLC v. Doe*, No. 1:15-cv-01834 (S.D.N.Y July 20, 2015) .................... 20

*Malibu Media, LLC v. Doe*, No. 2:13-cv-836, 2014 WL 1292692 (M.D. Fla. Mar. 31, 2014) .. 15

*Malibu Media, LLC v. Doe*, No. 8:14-cv-2351, 2015 WL 574274 (M.D. Fla. Feb. 11, 2015)... 12

*Malibu Media, LLC v. Doe*, No. No. PWG-13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) ................................................................................................................... 12

*Malibu Media, LLC v. Dreev*, No. 6:13-cv-1959, CM/ECF 35 (M.D. Fla. Jan. 5, 2015)........... 12

*Malibu Media, LLC v. Gilvin*, No. 3:13-cv-72, 2014 WL 1260110 (N.D. Ind. Mar. 26, 2014) . 12

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 | 855.231.9868

HEIT ERLBAUM

*Malibu Media, LLC v. Harris*, No. 1:12-cv-1117, 2013 WL 3780571 (S.D. Ind. July 18, 2013) ................................................................................................................................ 12

*Malibu Media, LLC v. John Doe*, No. 12-2078, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013) ......... 13

*Malibu Media, LLC v. John Doe*, No. 13-12178, 2013 WL 3945978 (E.D. Mich. July 31, 2013) ................................................................................................................................ 12

*Malibu Media, LLC v. John Doe*, No. 2:13-cv-00055 (N.D. Ind. Aug. 16, 2013)..................... 12

*Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 (E.D. Pa. June 18, 2013)................................................................................................ 7, 12

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013) ................................................................................................ 8

*Malibu Media, LLC v. Killoran*, 2:13-cv-11446 (E.D. Mich. Oct. 18, 2013) ........................... 12

*Malibu Media, LLC v. Lowry*, No. 13-cv-01560, 2013 WL 6024371 (D. Colo. Nov. 14, 2013) 12

*Malibu Media, LLC v. Pelizzo*, No. 12-22768, 2012 WL 6680387 (S.D. Fla. Dec. 21, 2012) ... 13

*Malibu Media, LLC v. Pratt*, No. 1:12-cv-00621 (W.D. Mich. Mar. 19, 2013) ....................... 13

*Malibu Media, LLC v. Roy*, No. 1:12-cv-617 (W.D. Mich. Jan. 3, 2013).................................. 13

*Malibu Media, LLC v. Sanchez*, No. 13-12168, 2014 WL 172301 (E.D. Mich. Jan. 15, 2014) . 12

*Malibu Media, LLC*, No. 12 Civ. 3810, 2013 WL 3732839 (S.D.N.Y. July 16, 2013) ............. 12

*Manny Film, LLC v. Doe*, No. 15-80306-Civ, 2015 WL 2411201 (S.D. Fla. May 20, 2015) .... 15

*Marbury v. Madison*, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803) ...................................... 21

*Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985)................................................................. 9

*Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011)............................................... 9

*Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153–54 (9th Cir. 2012) ... 11

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ................................................................................................................ 16

*Rotten Records, Inc.*, No. 1:15-cv-0446, 2015 WL 3540007 (W.D.N.Y. June 4, 2015) ............ 15

*TCYK, LLC v. Does*, No. 3:13-cv-3927, 2013 WL 6475040 (N.D. Tex. Dec. 10, 2013) ........... 15

*Third Degree Films v. Does*, No. C 11-02768, 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011) ... 15

*Uber Technologies, Inc. v. Doe*, No. C 15-00908 LB, 2015 WL 1205167 (N.D. Cal. Mar. 16, 2015) ...................................................................................................................... 10

*UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214 (N.D. Cal. Sept. 3, 2008) ............................................................................................................... 10, 19

*United States v. Richardson*, 4:11CR3116, 2012 WL 10382 (D. Neb. Jan. 3, 2012) ................. 17

*United States v. Tillotson*, 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008).............. 17

*Voltage Pictures, LLC v. Does*, No. 13-cv-01121, 2013 WL 4028587 (D. Colo. Aug. 7, 2013) 15

*Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009) ..................................... 9

**Statutes**

17 U.S.C. § 106 .......................................................................................................................... 11

47 U.S.C. § 551 .......................................................................................................................... 16

**Other Authorities**

*American Registry for Internet Numbers Number Resource Policy Manual* .............................. 14

*Beginner's Guide to Internet Protocol (IP) Addresses* ............................................. 14

**Rules**

Fed. R. Civ. P. 26(d)(1) ........................................................................................... 9

*Ex-Parte* Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 2:16-cv-00330-JAM-KJN

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff, Malibu Media, (d/b/a "X-art.com") operates a popular subscription based website where it displays its copyrighted material.[1]  Plaintiff creates its own content, which is being infringed on a massive scale.  The John Doe Defendant's IP address has been habitually used to infringe Plaintiff's copyrighted works.  Accordingly, Plaintiff seeks leave to serve limited, immediate discovery on the John Doe Defendant's Internet Service Provider, Comcast Cable (hereafter "ISP") so that Plaintiff may learn Defendant's true identity.  Plaintiff is suing Defendant for using the Internet, specifically the BitTorrent file distribution network, to commit direct copyright infringement.

Because Defendant used the Internet to commit this infringement, Plaintiff only knows Defendant by his Internet Protocol ("IP") address.  Defendant's IP address was assigned to the Defendant by his respective Internet Service Provider ("ISP").  Accordingly, the ISP can use the IP address to identify the Defendant.[2]  Indeed, ISPs maintain internal logs that record the date, time, and customer identity for each IP address assignment made by that ISP.  Materially, ISPs may maintain these logs for only a short period of time.

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on the Defendant's ISP.  This subpoena will demand the true name and address of the Defendant.  Plaintiff will only use this information to prosecute the claims made in its Complaint.  Without this information, Plaintiff can neither serve Defendant nor pursue this lawsuit to protect its valuable copyrights.

## II.   FACTS

### A.   Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business

Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch.  *See* Exhibit A at ¶ 2.  Ms. Field was a real estate agent and Mr. Field was a photographer.  *Id.*  When the real estate market started heading south,

---

[1] *See* Declaration of Colette Field, attached as Exhibit "A."
[2] *See* Declaration of Patrick Paige, attached as Exhibit "B."

6

Ms. Field knew she and her husband needed to start a business together. *Id*. at ¶ 3.  The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*.  The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. *Id*.  Their goal was to create erotica that is artistic and beautiful. *Id*. at ¶ 4.  The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id.* at ¶ 3-4.

Their vision has come to fruition.  Currently, X-Art.com has tens of thousands of members, but the Fields are finding it hard to grow and maintain the memberships when so many people are finding their films for free. *See generally id.*   They have worked hard and invested millions of dollars into their business in order to produce the best quality product. *Id.* at ¶ 8.  For the first three years (when their site was not as popular) they did not have as many issues with piracy. *Id.* at ¶ 10.  Now that their videos are highly desirable, more people steal their videos than pay for a subscription. *Id.*  Malibu Media receives many complaints from its members asking why they should pay to subscribe when Malibu Media's movies are available for free through BitTorrent. *Id.*  Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. *Id.* at ¶ 11.  Despite sending thousands of DMCA notices per week, the infringement continues. *Id.* at ¶ 12.  And, if one searches for "X-Art" on a torrent website, the site will reveal thousands of unauthorized torrents available for free. *Id.*  Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts across the country seeking to deter and stop the infringement.

Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial. *See Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013).  In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings.  Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of proof with substantial evidence and deserves a

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 | 855.231.9868

HEIT | ERLBAUM

large award." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

B.  Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously

Plaintiff has filed this suit for the sole purpose of protecting and enforcing its copyrights. *See* Exhibit A ¶ 14 ("[T]he purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and to seek some reasonable compensation for the massive amount of infringement of our copyrights."). Plaintiff has no intention of embarrassing Defendant because of the content of the works at issue and has instructed all of its counsel to always consent to allowing a John Doe Defendant to proceed anonymously. Further, Plaintiff does not solicit settlements prior to serving a defendant with the complaint and in all of its individual suits against a defendant, has only settled prior to serving when the defendant has initiated the request. Indeed, this is Malibu Media's nationwide policy. Should the Court wish to include language in its Order preventing Plaintiff from initiating settlements with Defendant and allowing Defendant to proceed anonymously, Plaintiff will not object.

C.  The Infringer

Defendant's Internet was used to infringe 22 of Plaintiff's copyrighted movies between 09/17/2014 and 12/08/2015. *See* Exhibit A to Complaint. Further, Plaintiff's evidence shows that Defendant's Internet has been used to distribute copyrighted works via the BitTorrent protocol for a significant period of time. By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal works such as Plaintiff's movies. See Complaint, at ¶¶ 11-20.

The length of time which Plaintiff's investigator recorded Defendant infringing copyrighted works demonstrates that the infringer was not a mere guest or passerby. It was someone with access to Defendant's Internet for a long period of time, consistently.

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 | 855.231.9868

### III.   __ARGUMENT__

Except for circumstances not applicable here, a party may not propound discovery in advance of a Rule 26(f) conference absent a court order.  *See* Fed. R. Civ. P. 26(d)(1).  Courts have broad discretion to issue such an order for good cause.  *See* Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); *AF Holdings LLC v. Doe*, No. 2:12-CV-2207 KJM DAD, 2012 WL 6608993, at *1 (E.D. Cal. Dec. 18, 2012) ("Courts apply a 'good cause' standard in considering motions to expedite discovery.").

A.  Circuit Courts Unanimously Permit Discovery to Identify John Doe Defendants

Federal Circuit Courts have unanimously approved the procedure of suing John Doe defendants and then using discovery to identify such defendants.  *See, e.g.*, *Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009) ("when the identities of alleged defendants are not known before the filing of a complaint, the plaintiff should be given an opportunity through [expedited] discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities"); *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) ("A plaintiff who is unaware of the identity of the person who wronged her can . . . proceed against a 'John Doe' . . . when discovery is likely to reveal the identity of the correct defendant").  *Accord Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010); *Blakeslee v. Clinton County*, 336 Fed. Appx. 248, 250 (3d Cir. 2009); *Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007); *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998); *Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980).

B.  Good Cause Exists to Grant the Motion

"In the Ninth Circuit, courts use the 'good cause' standard to determine whether discovery should be allowed to proceed prior to a Rule 26(f) conference. Good cause may be found where the need for expedited discovery, in consideration of the administration of justice,

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 | 855.231.9868

HEIT | ERLBAUM

outweighs the prejudice to the responding party." *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008). "Courts routinely find the balance favors granting a plaintiff leave to take early discovery." *Id.* "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980)).

In balancing the administration of justice with the prejudice to the responding party, "[a]nd specifically in internet infringement cases, 'courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity prior to a Rule 26(f) conference, where a plaintiff makes a *prima facie* showing of infringement, there is no other way to identify a Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference.'" *Bright Solutions for Dyslexia, Inc. v. Doe 1*, 2015 WL 5159125, at *1 (N.D. Cal. Sept. 2, 2015). Courts also consider "whether the plaintiff: (1) identifies the Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court; (2) recounts the steps taken to locate and identify the defendant; (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to lead to identifying information that will permit service of process." *Uber Technologies, Inc. v. Doe*, No. C 15-00908 LB, 2015 WL 1205167, at *2 (N.D. Cal. Mar. 16, 2015); *see also Dallas Buyers Club, LLC v. Doe-72.199.251.97*, No. 15CV2033-BAS DHB, 2015 WL 5675540, at *2 (S.D. Cal. Sept. 25, 2015) (analyzing similar factors).

As set forth below, Plaintiff establishes all of these factors.

1. *Plaintiff's Prima Facie Claim for Copyright Infringement Withstands a Motion to Dismiss*

Here, Plaintiff's Complaint withstands a motion to dismiss by alleging *prima facie* direct copyright infringement.  *See* CM/ECF 1.  To adequately allege such a claim, a plaintiff must allege: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 | 855.231.9868

HEIT ERLBAUM

the copyrighted work.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153–54 (9th Cir. 2012); *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 5:14-cv-01409, 2015 WL 2265479, *5 (N.D. Cal. May, 13, 2015).  Further, the use of a peer-to-peer file-sharing service (such as BitTorrent) to copy and distribute copyrighted works constitutes direct copyright infringement.  *See* 17 U.S.C. § 106; *see also, In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright.").

Here, Plaintiff properly pleads a cause of action for copyright infringement by plausibly alleging:

> 32. Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.
>
> 33. By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.
>
> 34. Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

Complaint at ¶¶ 32-34. Plaintiff's allegations of infringement are attested to by Plaintiff's investigator, Excipio GmbH's employee, Daniel Susac.  *See* Declaration of Daniel Susac in Support of Plaintiff's Motion For Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference ("Susac Declaration") at ¶¶ 13 - 16, attached hereto as Exhibit "C."  And, as set forth on Exhibit "D," each digital file, as identified by a unique cryptographic file hash value, has been verified to contain a copy of one of Plaintiff's copyrighted works.  Moreover, during the first ever BitTorrent copyright lawsuit to reach trial, Judge Baylson concluded that Plaintiff's investigation technology was valid.  *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("I concluded that Malibu had expended considerable effort and expense to determine the IP addresses of the infringing parties, and the

*Ex-Parte* Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 2:16-cv-00330-JAM-KJN

technology employed by its consultants—both of whom were located in Germany and who testified at the trial of June 10, 2013—was valid.").

Further, Plaintiff's well-pled allegations constitute "a concrete, *prima facie* case of copyright infringement." *Malibu Media, LLC*, No. 12 Civ. 3810, 2013 WL 3732839, *5 (S.D.N.Y. July 16, 2013); *see also, e.g.*, *Malibu Media, LLC v. Dreev*, No. 6:13-cv-1959, CM/ECF 35 (M.D. Fla. Jan. 5, 2015) ("Plaintiff alleges that its investigator established an internet connection with the Defendant's IP address, whereby Plaintiff's investigator downloaded from Defendant copies of the protected works.  From those facts, it is plausible that the Defendant is liable for the infringement."); *Malibu Media, LLC v. Doe*, No. No. PWG-13-365, 2014 WL 7188822, *4 (D. Md. Dec. 16, 2014) ("[T]he factual allegations in the complaint require no inferences at all: Malibu has alleged that '[b]y using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights–in–Suit.'  If Defendant did so, and Malibu held a valid copyright in the Films, then no further inference is needed to find Defendant liable for copyright infringement.").[3] Accordingly, Plaintiff has met its obligation to plead a *prima facie* case.

Further, as explained in section III, B, 4, *infra*, Plaintiff has specifically identified Defendant by an IP address.  *See* Complaint, at ¶¶ 2-7.  "Therefore, at this early juncture, it appears Plaintiff has alleged sufficient facts to show it can likely withstand a motion to dismiss

_____

[3] *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 8:14-cv-2351, 2015 WL 574274, *2 (M.D. Fla. Feb. 11, 2015) (denying motion to dismiss); *Malibu Media, LLC v. Benitez*, No. 8:13-cv-03209, CM/ECF 26 (M.D. Fla. Aug. 7, 2014) (same); *Malibu Media, LLC v. Butler*, No. 13-cv-02707, CM/ECF 31 (D. Colo. April 24, 2014) (same); *Malibu Media, LLC v. Gilvin*, No. 3:13-cv-72, 2014 WL 1260110 (N.D. Ind. Mar. 26, 2014) (same); *Malibu Media, LLC v. Sanchez*, No. 13-12168, 2014 WL 172301, *3–4 (E.D. Mich. Jan. 15, 2014) (same); *Malibu Media, LLC v. Lowry*, No. 13-cv-01560, 2013 WL 6024371, *5–7 (D. Colo. Nov. 14, 2013) (same); *Malibu Media, LLC v. Killoran*, 2:13-cv-11446, CM/ECF 13 (E.D. Mich. Oct. 18, 2013) (same); *Malibu Media, LLC v. John Doe*, No. 2:13-cv-00055, CM/ECF 22 (N.D. Ind. Aug. 16, 2013) (same); *Malibu Media, LLC v. John Doe*, No. 13-12178, 2013 WL 3945978, *3–5 (E.D. Mich. July 31, 2013) (same); *Malibu Media, LLC v. Harris*, No. 1:12-cv-1117, 2013 WL 3780571 (S.D. Ind. July 18, 2013) (same); *Malibu Media LLC v. John Doe*, No. 12-3180, 2013 WL 3732839, *3–4 (S.D.N.Y. July 16, 2013) (same); *Malibu Media, LLC v. Pratt*, No. 1:12-cv-00621, CM/ECF 31 (W.D. Mich. Mar. 19, 2013) (same); *Malibu Media, LLC v. John Doe*, No. 12-2078, 2013 WL 30648, *4 (E.D. Pa. Jan. 3, 2013) (same); *Malibu Media, LLC v. Roy*, No. 1:12-cv-617, CM/ECF 24 (W.D. Mich. Jan. 3, 2013) (same); *Malibu Media, LLC v. Pelizzo*, No. 12-22768, 2012 WL 6680387, *1 (S.D. Fla. Dec. 21, 2012) (same).

12

_____

HEIT ERLBAUM
6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 | 855.231.9868

for lack of personal jurisdiction because Defendant's IP address was traced to a location in this district." *Dallas Buyers Club, LLC v. Doe-72.199.251.97*, No. 15CV2033-BAS DHB, 2015 WL 5675540, at *3 (S.D. Cal. Sept. 25, 2015).  Further, in copyright cases, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).  "The Ninth Circuit interprets this statutory provision to allow venue 'in any judicial district in which the defendant would be amendable to personal jurisdiction if the district were a separate state.'" *Dallas Buyers Club, LLC v. Doe-72.199.251.97*, 2015 WL 5675540, at *3 (quoting *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1128 (9th Cir. 2010)).  Because Plaintiff's Complaint sufficiently alleges facts showing that Defendant's IP Address was traced to a location within this District, Plaintiff's Complaint will likely survive a motion to dismiss for lack of jurisdiction or improper venue.

2. *No Alternative Means Exist to Obtain Defendant's True Identity*

Second, Plaintiff knows Defendant only by his or her IP address and has no way to ascertain Defendant's identity other than by subpoenaing the ISP. "Postponing disclosure of information until the normal course of discovery is not an option in the instant case because, without disclosure of Defendants' names and contact information, the litigation cannot proceed to that stage." *UMG Recordings, Inc*, 2006 WL 1343597, at *1.  "As to IP addresses, expedited discovery is appropriate because the addresses can assist in the identification of Doe defendants." *Assef v. Does 1-10*, No. 15-CV-01960-MEJ, 2015 WL 3430241, at *2 (N.D. Cal. May 28, 2015).

Unlike phone numbers or license plates, there are no publicly-available databases or "yellow pages" that can identify an individual by an IP address.  Rather, the ISP responsible for assigning a given IP address is the only entity that maintains records that make it possible to "know who an address is assigned to and how to get in contact with them." *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2.[4] As explained by Plaintiff's forensic expert, who spent eleven

---

[4]   Available   at   https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.

years investigating computer offenses: "Once provided with the IP Address, plus the date and time of the detected and documented activity, ISPs can use their subscriber logs to identify the name, address, email address and phone number of the applicable subscriber in control of that IP address at the stipulated date and time." *See* Declaration of Patrick Paige at ¶ 11 (Exhibit B).

That only ISPs are able to identify individuals by IP addresses was reaffirmed by Jason Weinstein, Deputy Assistant Attorney General, when he testified before Congress: "[ISPs'] records are the only available evidence that allows us to investigate who committed [wrongs] on the Internet.  They may be the only way to learn, for example, that a certain Internet address was used by a particular human being . . . ."[5]

Similarly, courts in online peer-to-peer copyright infringement cases repeatedly and unanimously acknowledge that the *only way* for a plaintiff to proceed against a doe defendant is to subpoena the responsible ISP to obtain the subscriber information.  "There does not appear to be any other way for plaintiff to identify the defendant and pursue the lawsuit to protect its copyrighted Video." *AF Holdings LLC v. Doe*, No. 2:12-CV-2207 KJM DAD, 2012 WL 6608993, at *2 (E.D. Cal. Dec. 18, 2012).  *See also, e.g.*, *Cobbler Nevada, LLC v. Does*, No. 2:15-cv-11871, 2015 WL 4276082, *1 (E.D. Mich. July 14, 2015) (allowing a copyright holder to subpoena an ISP to identify the subscriber of an infringing IP address, recognizing that the identifying information was otherwise unavailable); *In Re Malibu Media*, No. 15-cv-1855, 2015 WL 3605834, *4 (E.D.N.Y. June 8, 2015) (same); *Rotten Records, Inc.*, No. 1:15-cv-0446, 2015 WL 3540007, *2 (W.D.N.Y. June 4, 2015) (same); *Manny Film, LLC v. Doe*, No. 15-80306-Civ, 2015 WL 2411201, *1 (S.D. Fla. May 20, 2015) (same); *Malibu Media, LLC v. Doe*, No. 2:13-cv-836, 2014 WL 1292692, *2 (M.D. Fla. Mar. 31, 2014) (same); *TCYK, LLC v. Does*, No. 3:13-cv-3927, 2013 WL 6475040, *2 (N.D. Tex. Dec. 10, 2013) (same); *Third Degree Films v. Does*, No. C 11-02768, 2011 WL 5374569, *2 (N.D. Cal. Nov. 4, 2011) (same); *Digital Sin,*

_____

[5]   Testimony before the Committee on Judiciary Subcommittee on Crime, Terrorism, and Homeland                              Security,                              available                              at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf

*Ex-Parte* Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 2:16-cv-00330-JAM-KJN

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 / 855.231.9868

HEIT ERLBAUM

*Inc. v. Does*, No. C 11-04397, 2011 WL 5362068, *2 (N.D. Cal. Nov. 4, 2011) (same); *see also, e.g.*, *Voltage Pictures, LLC v. Does*, No. 13-cv-01121, 2013 WL 4028587, *3 (D. Colo. Aug. 7, 2013) ("The Court finds that Plaintiff lacks a viable alternative means of obtaining the information sought in the subpoena.  While this information is not guaranteed to produce the identity of the infringer, **the Court can think of no other reasonable way of discovering the infringer than by permitting Plaintiff discovery into the identity of Doe**[.]") (emphasis added).

   *3.   There is a Risk that Defendant's ISP will not Retain Records Correlating Defendant's True Identity*

   Further, there is a real risk of lost data because the United States does not currently have any data retention laws requiring ISPs to maintain records for a specified period of time.  This issue was brought to the forefront in testimony before Congress regarding data retention policies.  Kate Dean, of the United States Internet Service Provider Association, commented on the "extremely complicated and burdensome" costs associated with "maintaining exponentially-increasing volumes of data[.]"   *See* January 25, 2011 Statement before the Committee on Judiciary Subcommittee on Crime, Terrorism, and Homeland Security.[6]   Jason Weinstein, Deputy Assistant Attorney General, likewise acknowledged that given the costs, ISPs often keep records only for a matter of "weeks, months" or "very briefly before being purged."  *See* January 25, 2011 Statement before the Committee on Judiciary Subcommittee on Crime, Terrorism, and Homeland Security.[7]

   Courts have also acknowledged the risk that the ISP will retain the data for only a limited time period: "[E]xpedited discovery is appropriate because ISPs typically retain user activity logs for only a limited period, ranging from as short as a few days to a few months, before erasing data.  If the information is not disclosed before it is destroyed, Plaintiffs will

---

[6] Available at http://judiciary.house.gov/_files/hearings/pdf/Dean01242011.pdf

[7]Available                                                                                                                                   at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf

15

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 | 855.231.9868
HEIT ERLBAUM

forever lose their opportunity to pursue infringement claims against the people associated with these IP addresses." *UMG Recordings, Inc*, 2006 WL 1343597, at *1 (citation omitted). "Furthermore, there is some need for exigency given the risk that the information sought may be inadvertently destroyed by [the ISP] in the ordinary course of business." *AF Holdings LLC v. Doe*, No. 2:12-CV-2207 KJM DAD, 2012 WL 6608993, at *2 (E.D. Cal. Dec. 18, 2012).

To ameliorate some of this problem in the online copyright infringement context, Congress enacted certain provisions into the Digital Millennium Copyright Act ("DMCA"). To protect against the loss of an infringer's identifying information and to ensure that ISPs cooperate with copyright holders, the DMCA affords ISPs with liability protections in exchange for their prompt assistance in identifying online copyright infringers. *See* S. REP. 105-190, 20; 47 U.S.C. § 551 *et seq*; *In re Verizon Internet Servs., Inc.*, 240 F. Supp. 2d 24, 37 (D.D.C. 2013) *rev'd sub nom. Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003). Thus, Defendant's ISP can and will comply with Plaintiff's requested subpoena to the extent that it is expeditiously issued while the responsive records are still maintained.

### 4. *Plaintiff Identifies Defendant with Specificity*

As set forth in Plaintiff's Complaint, Plaintiff's Investigator has identified Defendant with specificity by identifying Defendant's IP Address and the date and time Defendant engaged in the distribution of Plaintiff's works. *See* Exhibit A to the Complaint. Further, "Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District." *See* Complaint at ¶ 5. Specifically, Plaintiff used Maxmind® Premium's IP geolocation database to determine that Defendant properly resided in a location both within the state of California and in this District.

Courts have previously held that "[w]hile such publicly available IP locators are not 100% accurate, they have been accepted as making out a prima facie case of personal

*Ex-Parte* Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 2:16-cv-00330-JAM-KJN

jurisdiction." *Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838, at *4 (S.D.N.Y. May 15, 2012).  From Plaintiff's experience, Maxmind's Geolocation database has consistently predicted the location of the Defendant 99% of the time.  Indeed, this exact geolocation technology has also been relied upon by federal law enforcement.  *See United States v. Tillotson*, 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) (noting that Maxmind's database correctly identified the Defendant and is sufficient to establish probable cause); *United States v. Richardson*, 4:11CR3116, 2012 WL 10382 (D. Neb. Jan. 3, 2012) (used by Homeland Security to identify the defendant).

Under these circumstances, Plaintiff has specifically identified Defendant as a person who can be sued in this District.  *See Cobbler Nevada, LLC v. Doe-68.8.213.203,* No. 15-CV-2729-GPC (JMA), 2015 WL 9026554, at *2 (S.D. Cal. Dec. 15, 2015) ("[A] plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP address to a physical point of origin." (*citing 808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash*, 2012 WL 1648838, at *4 (S.D. Cal. May 4, 2012)); *see also Braun v. Primary Distrib. Doe No. 1*, No. 12-5812 MEJ, 2012 WL 6087179, at *2 (N.D. Cal. Dec. 6, 2012) (finding that under similar circumstances, "Plaintiff has come forward with sufficient information demonstrating that the Defendants are real persons or entities who may be sued in federal court.").

5.  *Plaintiff has Taken Reasonable Steps To Identify Defendant*

Plaintiff has diligently attempted to correlate Defendant's IP address to Defendant by searching for Defendant's IP address on various web search tools, including basic search engines like http://www.google.com.  Plaintiff has further conducted its own diligent research on its ability to identify Defendant by other means by reviewing numerous sources of authority, most of which have been discussed above (*e.g.*, legislative reports, agency websites, informational technology guides, governing case law, etc.).  Plaintiff has also discussed the issue at length with its computer forensics investigator, an individual who was tasked with the

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 | 855.231.9868

HEIT | ERLBAUM

17

responsibility of investigating and identifying cybercriminals for over ten years. Plaintiff has been unable to identify any other way to go about obtaining the identities of its infringers and does not know how else it could possibly enforce its copyrights from illegal piracy over the Internet. "This is the case because although publicly available data allowed Plaintiff to identify the specific ISP used by Defendant as well as the city associated with the IP address, it did not permit Plaintiff to ascertain the identity of the subscriber or actual defendant. Accordingly, Plaintiff appears to have investigated and obtained the data pertaining to the alleged infringement in a good faith effort to locate Defendant." *Cobbler Nevada, LLC v. Doe-68.8.213.203*, No. 15-CV-2729-GPC (JMA), 2015 WL 9026554, at *2 (S.D. Cal. Dec. 15, 2015).

6.  *Plaintiff's Subpoena is Likely to Lead to Identifying Information That Will Permit Service on Defendant*

This "factor examines whether Plaintiff has demonstrated that there is a reasonable likelihood that the discovery [it] requests will lead to the identification of Defendants such that it may effect service of process. As indicated above, Plaintiff contends that the key to locating the Defendants is through the IP addresses associated with the alleged activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP address to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with this case. Taking this into account, the Court finds that Plaintiff has made a sufficient showing as to this factor." *Braun*, 2012 WL 6087179, at *3 (citations omitted); *see* also *AF Holdings LLC v. Doe*, No. 2:12-CV-2204-JAM-EFB, 2012 WL 5465976, at *3 (E.D. Cal. Nov. 7, 2012) ("[P]laintiff cannot proceed with this lawsuit without obtaining John Doe's identity."). Indeed, without the subpoenaed information, Plaintiff will not know who to serve.

*Ex-Parte* Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 2:16-cv-00330-JAM-KJN

C.  <u>Plaintiff's Need for Expedited Discovery, in Consideration of the Administration of Justice, Outweighs Any Prejudice to Defendant or the ISP</u>

Plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs any prejudice to Defendant or the ISP. "Looking first at 'the administration of justice,' without expedited discovery, Plaintiffs cannot identify Defendants, which means this matter cannot proceed forward, and Plaintiffs will continue to suffer ongoing, continuous injury due to Defendants' illegal activities." *Assef*, 2015 WL 3430241, at *3.  "Moreover, the Court finds that the expedited discovery sought furthers the interests of justice and presents minimal inconvenience to the ISPs to which the subpoenas are directed."  *Braun*, 2012 WL 6087179, at *4.

1. *Defendant is Not Prejudiced Because Plaintiff's Request is Narrowly Tailored*

Further, Plaintiff's discovery request is narrowly tailored.  Here, Plaintiff seeks to discover from the Defendant's ISP the true name and address of the Defendant.  This is all specific information in the possession of Defendant's ISP that will enable Plaintiff to serve process on Defendant.  Because the requested discovery is limited and specific, there is no prejudice to Defendant. *See Bright Solutions*, 2015 WL 4776113 at *3 ("[T]here is no prejudice to the defendant where the discovery request is narrowly tailored to only seek their identity"); *UMG Recordings, Inc.*, 2008 WL 4104214 at *4 (same).  "Because the discovery request seeks only the names and contact information of the people associated with certain IP addresses at certain times, it is 'sufficiently specific' to establish a reasonable likelihood that it would lead to identifying information that would make possible service upon the defendants, without revealing more than is necessary." *UMG Recordings, Inc.*, 2006 WL 1343597, at *3.

2. *Plaintiff's Need to Ascertain Defendant's Identity Outweighs Defendant's Interest in Remaining Anonymous.*

Further, Plaintiff has a strong legitimate interest in protecting its copyrights.  Defendant is a copyright infringer with no legitimate expectation of privacy in the subscriber information he provided to his ISP, much less in distributing the copyrighted work in question without

19

permission.  "[T]he right to anonymity is not absolute.  Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim. . . .  [Thus], plaintiffs alleging widespread copyright infringement may discover the identities of individuals alleged to have illegally downloaded plaintiffs' musical recordings" *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *4 (N.D. Cal. Nov. 9, 2011) (citing *Sony Music Entm't v. Does*, 326 F. Supp.2d 556 (S.D.N.Y. 2004)); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 191 (S.D.N.Y. 2012) ("ISP subscribers have a minimal expectation of privacy in the transmission or distribution of copyrighted material.").  Thus, Plaintiff's need for the subpoenaed information outweighs any interest Defendant has in remaining anonymous.

Under the circumstances, Plaintiff submits that it has established good cause and that the balancing of harms necessarily tilts in favor of granting expedited discovery so that Plaintiff can proceed with this litigation and enforce its copyrights.  Indeed, the denial of Plaintiff's motion for leave necessarily amounts to the functional equivalent of a dismissal of this action.  *Cf. Malibu Media, LLC v. Doe*, No. 1:15-cv-01834 CM/ECF 19 (S.D.N.Y July 20, 2015) (explaining that denying Plaintiff the ability to subpoena an internet service provider "would effectively end the litigation Malibu has been pursuing against Doe, because Malibu would not be able to serve Doe.").  Such a ruling runs counter to established authority and violates Plaintiff's Due Process rights insofar as it would leave Plaintiff with valid copyrights but no way to enforce those rights over the Internet.  *Cf. Marbury v. Madison*, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803) ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury."); *Gillespie*, 629 F.2d at 642 (holding that courts should not dismiss suits against unnamed defendants or defendants identified only as John Does until the plaintiff is given "an opportunity through discovery to identify the unknown defendants"); *see also Davis*, 160 F.3d at 921 (same).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff leave to issue a Rule 45 subpoena to Defendant's ISP.

Respectfully submitted,

HEIT ERLBAUM, LLP

By: /s/ Brian Heit
BRIAN HEIT, ESQ

Attorney for Malibu Media, LLC
E-mail: Brian.heit@HElaw.attorney

6320 Canoga Ave, 15th Floor, Woodland Hills, California 91367 / 855.231.9868

21